UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK KING,

Plaintiff,

v.

Case No. 4:25-cv-10277
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

KELLY JEX, PETER LUCIDO,
and COUNTY OF MACOMB,

Defendants.
__________________________________/

# REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 36) AS MOOT AND TO DENY PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 37) AND TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 38)[1]

## I. Introduction

This is a civil rights case under 42 U.S.C. § 1983. Plaintiff Frank King, proceeding *pro se*, is suing the above-captioned defendants for malicious prosecution, alleging that he was wrongfully arrested and charged with a home invasion he did not commit. (ECF No. 1). Pretrial proceedings have been referred

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

to the undersigned. (ECF No. 5).

Before the Court are King's motion for summary judgment (ECF No. 36), King's amended motion for summary judgment (ECF No. 37), and defendants' motion for summary judgment (ECF No. 38). Responses have been filed (ECF Nos. 40, 41), and the motions are ready for decision. For the reasons that follow, it is RECOMMENDED that King's motion for summary judgment be DENIED AS MOOT, King's amended motion for summary judgment be DENIED, and defendants' motion for summary judgment be GRANTED. If this recommendation is adopted, the case will be closed.

## II. Background

### A. Procedural History

On January 30, 2025, King filed the complaint. (ECF No. 1). On March 4, 2025, Assistant Prosecutor Kelly Jex (Jex), Prosecutor Peter Lucido (Lucido), and the County of Macomb (collectively "defendants" where appropriate) appeared and filed a motion to dismiss. (ECF No. 12). On April 1, 2025, King filed an amended complaint in response to the motion (ECF No. 16) along with a motion for leave to amend the complaint (ECF No. 15). On April 25, 2025, defendants filed an answer to the amended complaint. (ECF No. 17).

The undersigned recommended that King's motion for leave to amend the complaint be granted and that defendants' motion to dismiss be denied as moot.

(ECF No. 18). No objections were filed, and the recommendation was adopted by the district judge on May 20, 2025. (ECF No. 19). The amended complaint therefore governs this case. In the amended complaint, King is suing Jex, Lucido, and Macomb County. Notably, although King sued the City of Fraser and former police detective Kurt Peterson in the original complaint, he did not name them in the amended complaint, and they were terminated from the case. (ECF No. 20).

The undersigned then entered a scheduling order, setting a discovery deadline of September 22, 2025, and dispositive motion deadline of October 22, 2025. (*Id.*). Following discovery-related motion practice, including a motion to compel and motion for a protective order, the undersigned extended the scheduling order, setting a discovery deadline of October 22, 2025, and a dispositive motion deadline of November 24, 2025. (ECF No. 29). After additional motion practice, the scheduling order was again extended a final time, with discovery closing on December 29, 2026 and dispositive motions due by January 26, 2026. (ECF No. 35).

On December 1, 2025, King filed a motion for summary judgment. (ECF No. 36). On January 21, 2026, King filed an amended motion for summary judgment. (ECF No. 37). On January 26, 2026, defendants filed a motion for summary judgment. (ECF No. 38). Defendants filed a response to King's motion (ECF No. 40), and King filed a response to defendants' motion (ECF No. 41).

Neither side filed a reply.

B. Factual Background

The material facts as gleaned from the record follow. This case arises out of investigation of a home invasion by the Fraser Police Department and its officer Kurt Peterson which took place on May 23, 2016. As reflected in a state court opinion, the complaining witness, Robert Kolton, described the incident as follows. Kolton was sitting at home when he heard someone at his door. He first thought it was a friend and apparently let the person in, but realized he did not know the person. Kolton asked the person what he was doing, and the person turned back and hit Kolton, knocking him to the ground. The person ran out of the house and Kolton chased him outside. (ECF No. 38-3, PageID.516).

At that time, Jex was a Macomb County Assistant Prosecuting Attorney, a role she served in from January 2016 through August 2018. She served under the former prosecutor Eric Smith. In her role as assistant prosecutor, she would review requests from the various county police agencies to determine whether a warrant should issue. In 2016, Peterson came to the Macomb County Prosecutor's Office seeking a possible criminal complaint/warrant for First Degree Home Invasion. At that time, she reviewed the handwritten statement of the victim (Kolton), the investigator's file which included all police supplemental reports, and an MSP Crime Lab Report identifying Frank King through DNA. This was the first and

only time Jex met with Peterson about the case. Jex, believing that there was probable cause to establish a home invasion, prepared the warrant and complaint and handed that file back to Peterson. (ECF No. 27-4, Jex Affidavit; ECF No. 38-2, Peterson Affidavit).

At some point thereafter, Kolton received a letter requesting his presence at a parole hearing in Detroit on January 20, 2017. Kolton appeared at the parole hearing, which was for King, and identified him as the person who invaded his home. Kolton also testified he recognized King after looking him up on the Michigan Department of Corrections' website. (ECF No. 38-3, PageID.515-518).

A preliminary examination was held after which a state court district judge bound King over for trial. King filed a *pro se* motion to suppress Kolton's identification. The state circuit court judge held a hearing and denied the motion. Thereafter, King pleaded *non contendre* to the charge of Home Invasion 1. On July 28, 2023, the Michigan Supreme Court reversed his plea on procedural grounds and remanded the case back to the trial court for further proceedings. There were no evidentiary issues or evidentiary matters raised concerning the arrest process or deficiencies of the arrest warrant, or claims related to probable cause findings or failure to suppress evidence. Rather, the Court found that King was entitled to a new trial because of an invalid waiver of the right to counsel prior to his plea. *People v. King*, 999 N.W.2d 670 (Mich. 2023).

Lucido was elected as Prosecuting Attorney on June 1, 2021. In July, the circuit court docketed the case and the Prosecutor's office assigned the matter to an assistant prosecutor. (ECF No. 38, PageID.489). King went to trial and was found not guilty on February 1, 2024. (ECF No. 37, PageID.470).

On January 30, 2025, King filed the instant lawsuit. (ECF No. 1). In broad terms, the amended complaint alleges a malicious prosecution claim under § 1983 against Jex and Lucido and a *Monell* claim against Macomb County. (ECF No. 16).

## III. Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2)

(providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that King is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (citation modified).

Where, as here, a plaintiff seeks summary judgment on claims for "which he bears the burden of proof at trial, he faces a 'significantly higher hurdle.'" *Horton v. Greene*, No. 16-CV-12715, 2019 WL 1552480, at *2 (E.D. Mich. Apr. 10, 2019) (quoting *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002)). The summary judgment burden here is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful

that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56–138 (3d ed. 2000)).

Finally, the fact that the parties have filed cross motions does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

## IV. Discussion

As an initial matter, King's original motion for summary judgment should be denied as moot based his filing of an amended motion, which supersedes the original motion. *See Int'l-Matex Tank Terminals - Illinois v. Chem. Bank*, No. 1:08-CV-1200, 2009 WL 10725373, at *1 (W.D. Mich. Apr. 27, 2009) ("Defendant Chem Bank's corrected motion for summary judgment supersedes and moots the original motion for summary judgment, rendering it a nullity.").

### A. Jex and Lucido

Jex and Lucido argue that they are entitled to immunity and that King has not put forth any evidence to substantiate a malicious prosecution claim against them.

"[A] prosecutor is absolutely immune from liability for 'initiating a prosecution' and 'presenting the State's case.'" *Howard v. Livingston County*, No. 21-1689, 2023 WL 334894, at *4 (6th Cir. Jan. 20, 2023) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). Determining whether a prosecutor's conduct falls within those categories calls for a "functional approach." *Id*. (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "This approach looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Id*. (quoting *Buckley*, *supra*; *Forrester v. White*, 484 U.S. 219, 229 (1988)). "Under the functional approach, 'the official seeking absolute immunity bears the burden of showing that [absolute] immunity is justified for the function in question.'" *Id*. (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Courts have been 'quite sparing' in extending this immunity to state actors in the § 1983 context." *Id*. (citing *Buckley*, 509 U.S. at 269; *Forrester*, 484 U.S. at 224). "A prosecutor is entitled to absolute immunity only when that prosecutor acts 'as an advocate for the State' and engages in activity that is 'intimately associated with the judicial phase of the criminal process.'" *Id*. (quoting *Imbler*, 424 U.S. at 430).

The Supreme Court has explained that '[a] prosecutor's administrative duties

and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'" *Id*. (quoting *Buckley*, 509 U.S. at 273). "For example, a prosecutor who 'performs the investigative functions normally performed by a detective or police officer' such as 'searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested' is not entitled to absolute immunity because that immunity does not protect 'the investigative functions normally performed by a detective or police officer.'" *Id*. (quoting *Buckley*, *supra*).

"The Supreme Court has made clear that the applicability of prosecutorial immunity depends on whether the conduct at issue is intimately connected to the judicial process, though the line between conduct that is part of a preliminary investigation and conduct that is intimately associated with the judicial phase of a criminal proceeding may be difficult to draw." *Howard*, 2023 WL 334894, at *4 (citation omitted). "Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Burns*, 500 U.S. at 495. "Nevertheless, the approach endorsed by the Supreme Court in *Burns* and *Buckley*, and repeatedly applied by [the Sixth Circuit], focuses on the specific conduct at issue and requires

[the Court] to determine whether a prosecutor was acting as an advocate for the state, or was simply engaging in preparatory conduct and performing administrative or investigative functions." *Howard*, 2023 WL 334894, at *4 (citing *Stockdale v. Helper*, 979 F.3d 498, 502-06 (6th Cir. 2020) (rejecting absolute immunity for personnel action taken by prosecutor); *Rieves v. Town of Smyrna*, 959 F.3d 678, 690-92 (6th Cir. 2020) (denying absolute immunity for conduct prior to initiation of judicial proceedings).

Here, King alleges that Jex assisted Peterson by consulting with him concerning line-ups and other evidentiary matters. (ECF No. 16, PageID.148). If true, these actions would be outside the scope of the protections of prosecutorial immunity. However, Peterson has submitted an affidavit stating that Jex "did not help me in any identification process of King; she did not direct me in how my investigation would proceed, and did not assist me with the accumulation of evidence or processes used to obtain identification." (ECF No. 38-2, PageID.511). Peterson also states that he "did not schedule or participate in any line up process with or outside the presence of [Jex]; nor was I ordered by [Jex] to schedule a line up." *Id*.

At deposition, Jex denied that she participated in any investigatory activities, explaining that prosecutors do not initiate warrants; rather, the police go to a magistrate to obtain the warrant. (ECF No. 38-4, PageID.526-527). Jex also

previously submitted an affidavit, in connection with a discovery issue, stating that Peterson "did not contact [her] to discuss any issues concerning the investigation, and that prior to the issuance of the warrant and complaint, [she] had no knowledge of [the] investigation." (ECF No. 27-4, PageID.319). She also "did not handle any pretrial motions and did not try the case." (*Id.*).

King has offered no evidence to cast doubt on this evidence, much less show how Jex "maliciously prosecuted" him. At most, Jex authored a complaint and warrant and recommended the issuance of an arrest warrant based on the information that Peterson presented to her. It is well settled that a prosecutor is entitled to absolute immunity when she acts "as an advocate for the State"; recommending an arrest warrant and presenting testimony in court — true or false — are activities "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. "[P]rosecutorial immunity extends to claims regarding the evaluation of evidence and the determination of probable cause." *Huffer v. Bogen*, 503 F. App'x 445, 459-60 (6th Cir. 2012). Jex's actions amounted to prosecutorial conduct inherent to the presentation of the State's case in a criminal prosecution, making Jex immune from suit. In other words, there is no evidence that Jex performed any act other than those within her authority as a prosecutor. Therefore, she is entitled to immunity.

As to Lucido, King alleges that he, "by virtue of agency, assignment, and

deliberate indifference[,] held onto the same knowledge…received by and from Defendant Jex by and through the same tandem police investigation" and committed "Malicious Prosecution … under Section 1983" by knowingly "persisting with the same investigative information collected…from Defendant Jex." (*Id.*, PageID.154-155). King also appears to allege that Lucido is liable for the decision to try him after King's case was remanded by the Michigan Supreme Court. (*Id.*, PageID.151-152).

At deposition, Lucido testified that he was elected in 2021 and did not know Jex, as she had left the office in 2018. (ECF No. 38-5, PageID.529). He also confirmed Jex's testimony that prosecutors do not submit the complaint and warrant forms approved by the assistant prosecutor to the magistrate. Rather, it is the police that take complaints to the magistrate for signature. (*Id.*, PageID.530).

Supervisory officials, such as Lucido, cannot be held liable under section 1983 unless they "encouraged the specific instance of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) (citation omitted). King must show that the supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. at 803 (citation omitted). "Supervisory liability under § 1983 cannot be based on a mere failure to act but must be based upon active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 558

(6th Cir. 2002).

Here, King has offered no evidence to show that Lucido was involved in any unconstitutional actions. Moreover, Lucido, as the Macomb County Prosecutor, enjoys broad immunity, as noted above.

Additionally, immunity aside, King has not established a federal malicious prosecution claim against Jex or Lucido. The elements of a Fourth Amendment malicious prosecution claim are "(1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (citations omitted). "The prototypical case of malicious prosecution involves an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person." *Id*.

Here, a state district court judge at the preliminary exam determined the credibility of the witnesses and evidence presented to bind King over for Home Invasion 1. The circuit court ruled that the identification of King by the sole witness was within the parameters of due process and the Fourth Amendment. King has not identified any evidence of "knowingly or reckless[ly] making false

statements in affidavits or reports" or other "fabricated evidence" to create probable cause which would overcome the "presumption of probable cause." *Jackson v. City of Cleveland*, 9256 F3d 793,821 (6th Cir. 2019). "Fabrication" means more than just wrong information—it means evidence offered "knowingly" or in bad faith. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3rd Cir. 2014); *Robertson v Lucas*, 753 F.3d 616 (6th Cir. 2014) ("[T]he malicious-prosecution tort remedies detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." quoting *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010))).

In the amended complaint, King alleges that the arrest warrant was not a valid warrant. (ECF No. 16, PageID.157). This allegation is apparently based on King's belief that the arrest warrant was signed by another police officer instead of Peterson, who was identified as the "Complaining Witness." However, under Michigan law, specifically M.C.L. § 764.1a(4)(d) and (5), a warrant is valid if it is signed by a prosecutor, a witness, and a magistrate. The warrant need not be signed by the complainant and may be based on information and belief.

An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest. *Vaylicky v Village of Timberlake, Ohio*, 412 F.3d 669-677 (6th Cir 2005); *Baker v McCollan*, 443 U.S. 137 (1979). Although King makes much of the fact that the magistrate's signature is hard to read, he does not allege in the amended complaint that the signatures are not valid

or that the magistrate did not sign it. King alleges that Jex assisted the Fraser Police in the investigation of this matter and worked "in tandem" with Peterson in compiling evidence against King, but as noted above, King has no evidence to support this and the record shows otherwise.

Put simply, despite King's assertions to the contrary, there is no evidence to support a malicious prosecution claim against either Jex or Lucido with regard to King's state court case, and his claims against them should be dismissed.

B. Macomb County

Macomb County argues that King has not made out a claim against it. "Municipalities are considered 'persons' within the meaning of section 1983," *Hirmuz v. City of Madison Heights*, 469 F. Supp. 466, 484 (E.D. Mich. 2007), and they therefore can be subjected to liability under § 1983. But municipal entities "are responsible only for their own illegal acts," and a municipality is "not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted). "Instead, a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was the 'moving force' behind the injury alleged." *Shehee v. Saginaw Cty.*, 86 F. Supp. 3d 704, 711 (E.D. Mich. 2015) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014)). In other words, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 691 (1978). Instead, a plaintiff asserting a § 1983 claim against a municipal entity must show that the action alleged to be unconstitutional implements a municipal policy or custom. *Id*. at 690-91.

Here, King has not identified any policy or custom that he contends led to his arrest and conviction, nor has he alleged any facts to plausibly suggest that any municipal custom or policy caused any of the alleged deprivations of his constitutional rights. His claim against Macomb County should therefore be dismissed.

## V. Conclusion

In the end, King was charged with a crime, a state district court judge found probable cause to send the case to trial, he went to trial, and he was acquitted. The fact that King was acquitted does not mean that the process was constitutionally infirm or that any of the defendants engaged in unconstitutional conduct.

For the reasons stated above, it is RECOMMENDED that King's motion for summary judgment (ECF No. 36) be DENIED AS MOOT, King's amended motion for summary judgment (ECF No. 37) be DENIED, and defendants' motion for summary judgment (ECF No. 38) be GRANTED. If this recommendation is adopted, the case will be closed.

Dated: July 14, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 14, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager